# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**HALA FARID,**

    **Plaintiff,**

**vs.**                                   **Case No. 4:18cv566-RH-MAF**

**LOUIS DEJOY,[1]**
**in his official capacity as**
**POSTMASTER GENERAL OF**
**THE UNITED STATES**
**POSTAL SERVICE,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The pro se Plaintiff filed an amended complaint against her employer

alleging discrimination and retaliation.  ECF No. 7.  Defendant has filed a

motion to dismiss the amended complaint.  ECF No. 53.  Plaintiff was

advised of her obligation to respond, ECF No. 54, and her response was

timely filed.  ECF No. 61.  The motion is ready for a ruling.

_____

[1] Plaintiff named **Megan J. Brennan** as the Defendant in her official capacity
only.  However, **Louis DeJoy** subsequently was appointed Postmaster General and
took office on June 15, 2020.  He is automatically substituted as the Defendant pursuant
to Federal Rule of Civil Procedure 25(d).

**Procedural History**

Plaintiff initiated this case on December 10, 2018.  ECF No. 1.  On December 18, 2018, Plaintiff requested leave to amend the complaint, ECF No. 6, and simultaneously submitted the proposed amended pleading, ECF No. 7.  Plaintiff's motion was granted, and Plaintiff was informed of her obligation to have Defendant served with process.  ECF No. 8.  Thereafter, Plaintiff was granted an extension of time to carry out service of process, ECF Nos. 9-10, but in early April 2019, it was discovered that Plaintiff had filed a bankruptcy petition.  ECF No. 11-12.  Pursuant to 11 U.S.C. § 362(a), the case was stayed and Plaintiff's request for additional time to carry out service of process was denied.  ECF No. 12.

During the time this case was stayed, Plaintiff filed a motion to consolidate this case with another case she filed just 49 days after filing this case - case number 4:19cv60-RH-MJF.  ECF No. 13.  Magistrate Judge Charles A. Stampelos entered an Order in May 2019 which deferred ruling on that motion in light of the stay.  ECF No. 14.  However, Plaintiff filed a similar motion in her other case, and on January 29, 2020, Magistrate Judge Michael J. Frank entered an Order in case number 4:19cv60 which consolidated that case with this case.  ECF No. 23.

On February 21, 2020, the stay was lifted and, because of the consolidation Order, Plaintiff was directed to file a second amended complaint "that properly combine[d] all relevant facts and claims" in one pleading.  ECF No. 27 at 5.  Plaintiff was given until March 20, 2020, to comply.  *Id.* at 6.  After granting Plaintiff an extraordinary number of extensions of time, she was advised that her sixth extension would be the final one provided.  ECF No. 40.  Plaintiff was specifically warned that because the case had been pending for two years and Defendant had not yet been served with a complaint, "no further extensions of time [would] be provided."  *Id.* at 3.  That Order required Plaintiff to file the second amended complaint by November 10, 2020.  *Id.* at 4.

When Plaintiff filed a remarkable seventh request for more time on the day before her deadline, her motion was denied.  ECF Nos. 41-42. Doing so altered the status of this case because Plaintiff was then ordered to serve her first amended complaint, ECF No. 7, in compliance with the prior service Order, ECF No. 8.  ECF No. 42.  Thus, notwithstanding that this case was consolidated with Plaintiff's second filed case (4:19cv60), it

does not include the events alleged in that second case or the EEOC[2]

matters addressed therein.  By failing to comply with the numerous Orders

providing Plaintiff multiple opportunities to file a second amended

complaint, this case proceeds only as to the events alleged in Plaintiff's first

amended complaint, ECF No. 7.  Any claims raised by Plaintiff in case

number 4:19cv60-RH-MJF which were not included in the first amended

complaint filed in this case should be dismissed for failure to prosecute.

**Plaintiff's Amended Complaint, ECF No. 7**

Plaintiff asserts claims under Title VII, 42 U.S.C. § 1981a, and the

Rehabilitation Act, ECF No. 7 at 1, and said she had been working for the

United States Postal Service since June 2005.  *Id.* at 2.  Plaintiff alleges

her race is White and her national origin is Egyptian.  *Id.*  She contends she

has a disability or, alternatively, that Defendant perceives her as disabled.

*Id.*  She further states that "she reported discrimination and was the victim

of retaliation thereafter."  *Id.*

---

[2] According to a motion to strike, ECF No. 55, filed by Plaintiff on May 5, 2021, this case included two administrative decisions - EEO # 4G-320-0047-15 and 4G-320-0012-16.  ECF No. 55 at 1.  Plaintiff's second case included EEO # 4G-320-0069-18.  *Id.*  As noted above, the second case is no longer part of this case.

Plaintiff relates numerous incidents in her amended complaint that occurred between 2007 and 2013. ECF No. 7 at 3-5. Those assertions are time barred in a case filed in December of 2018; presumably, they were presented only as background information.

Beginning in October of 2014, Plaintiff alleges that she was not paid properly. *Id.* at 5. She contends, without providing supporting facts, that the "different problems and pay errors" were "due to retaliation" for submitting previous EEO complaints. *Id.* at 6. Similarly, she alleged that she "was mistreated due to discrimination based on her National Origin, retaliation, harassment, and hostile work environment." *Id.* at 7. Again, she did not provide facts to support that assertion.[3]

She contends that in September 2014, she "expressed interest in supervisory positions," but the "Defendant intentionally failed to inform Plaintiff of supervisory openings and choose [sic] to hire high school degree employees, instead of [Plaintiff], who had [an] MBA." *Id.* at 8. She makes a conclusory assertion that she was qualified for the "supervisory positions, but was not considered due to her EEO activity." *Id.*

---

[3] Ironically, Plaintiff includes a myriad of details of irrelevant information, ECF No. 7 at 2-5, but does not include many relevant factual details to support her claims.

In early December 2014, Plaintiff contends that her supervisor, Paul Jones, gave her "a hard time as a way" to have her quit.  *Id.* at 8.  She states that he was angry, "yelled at" her, and was "loud and rude" when ordering her to "case all mail until late afternoon."  *Id.* at 9.  She further asserts that he "yelled at and discriminated against [her] because of her national origin" and "thereby creat[ed] a hostile work environment."  *Id.* She states that other employees "who were not White/Egyptian were not treated with such disrespect after making a simple and often granted request."[4]  *Id.* at 10.

On December 9, 2014, Plaintiff alleges that she informed Mr. Jones that she had car trouble with her "personal car."  *Id.* at 10.  She made several suggestions to Mr. Jones, including renting a car or use of a "government vehicle," which he denied.  *Id.*  He refused to find a resolution, told her to "leave immediately," and informed Plaintiff "that he would not pay her for the 4 hours she worked in casing her route."  *Id.*  She did as instructed and on the following day she discovered that the mail she had cased the day before "was still there, not delivered."  *Id.*  Plaintiff alleges he

---

[4] Plaintiff has not clearly alleged what she requested which prompted Mr. Jones' anger.  ECF No. 7 at 8-10.

"yelled at her again to case all that mail that was left behind." *Id.* at 11.

When Plaintiff "requested one-hour relief for that day," Mr. Jones refused.
*Id.*

Plaintiff also discovered that after she left as instructed, Mr. Jones
called another location and found a government vehicle (an "LLV ")[5] for
Plaintiff's replacement (Ms. McKenzie) to use to deliver the route.  ECF No.
7 at 11.  She contends that person was African American, and Mr. Jones
drove her to the Centerville Post Office facility to obtain an LLV when the
carrier finished her route.  *Id.*  Plaintiff contends that occurred at 2:00 p.m.,
which is when Plaintiff's personal vehicle was supposed to be ready.  *Id.*
Plaintiff also complains that Ms. McKenzie was "paid for the whole route,
including casing," which, presumably, Plaintiff had done.  *Id.*  Further,
Mr. Jones returned to the Centerville location to pick up Ms. McKenzie and
drive her back to the Lake Jackson Post Office facility.  *Id.*

On December 13, 2014, Plaintiff alleges that "Sunday Volunteers"
were requested "due to [a] shortage of substitute RCAs at Christmas
season."  *Id.* at 12.  Plaintiff and three others were chosen and added to

---

[5] An "LLV" is a "Long Life Vehicle" manufactured by the Grumman Corporation
and General Motors, commonly referred to simply as a mail truck.

the "weekly schedule calendar."  *Id.*  However, after management

determined that the Volunteers could not be used due to problems paying

"the regular carriers," Mr. Jones informed the other three Volunteers not to

show up on Sunday, December 14, 2014, and they reminded him to tell the

Plaintiff.  *Id.*  He failed to do so, so when Plaintiff arrived at work on Sunday

she discovered "she was the only regular carrier there."  *Id.*  She contends

her "time was not respected," *id.*, and it was her "only day to rest."  *Id.* at

13.  Plaintiff asserts that it was obvious to her "that this was a subtle

attempt to push her to quit."  *Id.* at 13.   She further claims that Mr. Jones

failed to inform her that she did not need to report for work as a Sunday

Volunteer "due to his bias towards her."  *Id.*

　　As Plaintiff left work on December 15, 2014, she fell "in the

Defendant's parking lot, due to the lack of appropriate lighting and wet

grass on the sidewalk."  *Id.* at 13.  "A woman in the parking lot witnessed

the slip and fall and called the ambulance for" Plaintiff.  *Id.*  Plaintiff

contends that Mr. Jones "came to the scene" and tried "to deprive" Plaintiff

of receiving Worker's Compensation benefits and gave her "a hard time to

obtain form CA-16," instead of "giving attention to the injured employee."

*Id.*  Mr. Jones also required Plaintiff to "provide medical documentation,"

and her doctor placed her on "limited duty."  *Id.*  Due to the doctor's

restrictions, Plaintiff was instructed not to come to work.  *Id.*  However, on

December 29, 2014, Plaintiff was mailed a modified job offer and was

requested to accept or deny it.  *Id.* at 15.  She claims the offer "was a

planned discriminatory and retaliatory termination."  *Id.* at 15-16.

Nevertheless, Plaintiff alleged that her physician "rejected the job offer,"

signed it, and attached a "CA-17" form which said that Plaintiff could not

return to work until MRI results were received.  *Id.* at 16.

Plaintiff says she returned to work a few weeks later, only to discover

that her "badge was invalid and" would not open the door.  ECF No. 7 at

16.  Further, her route "scanner" did not recognize her either.  *Id.*  She was

informed by a supervisor that her "badge did not work because she was not

supposed to be at work."  *Id.*  Plaintiff contends that "management officials"

were planning for her termination.  *Id.* at 17.

Plaintiff also alleged that Mr. Paul Jones paid other employees for

work performed by the Plaintiff.  *Id.*  Furthermore, Plaintiff contends that

she was "not paid for the extra work" she had to do in fixing the mistakes of

substitute mail carriers.  *Id.*

Count One of the amended complaint asserts a claim for disability discrimination.  Plaintiff contends that "Defendant took action against Plaintiff because of her disabling condition" and "terminated Plaintiff."  ECF No. 7 at 17-18.  No date is provided as to when Plaintiff's employment was terminated.

Count Two asserts a claim for "national origin discrimination" as Plaintiff claims she was treated differently than similarly situated employees of Defendant who are not Egyptian or of Egyptian descent . . . ."  *Id.* at 19.  Plaintiff claimed the Defendant "controlled the actions and inactions of the persons making decisions affecting Plaintiff . . . and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff."  *Id.*  Further, Defendant allegedly "condoned and ratified the differential treatment of Plaintiff . . . ."  *Id.*

Count Three is a claim for "race discrimination" in which Plaintiff contends she "was treated differently than similarly situated employees of Defendant who are not White/Egyptian."  *Id.* at 20.  Plaintiff claims she was subjected to "hostility and poor treatment on the basis, at least in part, of Plaintiff's race."  *Id.*

Count Four is a claim for retaliation.  ECF No. 7 at 22.  She admits that she "submitted a series of EEO complaints within Defendant on a multitude of issues."  *Id.*  She also contends that she discussed "that she was the victim of discrimination" with her supervisors, and "voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and was the victim of retaliation thereafter . . . ."  *Id.*

**Defendant's motion to dismiss, ECF No. 53**

Defendant argues that Plaintiff's amended complaint should be dismissed because Plaintiff failed to exhaust administrative remedies, that her claims are barred by the doctrine of res judicata, and the amended complaint fails to state a claim upon which relief may be granted.  ECF No. 53 at 1.  Defendant points out that this is Plaintiff's third lawsuit, and contends it "cannot proceed to discovery under any theory of recovery under the federal statutes at issue."  *Id.* at 2.

**Plaintiff's amended response, ECF No. 61**

In response, Plaintiff asserts that this case was timely filed and is not barred by res judicata because it is based on "sufficiently new facts with different dates."  ECF No. 61 at 7. Plaintiff contends her case has "more than sufficient" statements of fact to support her claims and requests that the Defendant's motion to dismiss be denied.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).[6]  "Conclusory allegations and legal

---

[6] A complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

conclusions are not sufficient;" a plaintiff must state a claim "that is plausible on its face."  Smith v. United States, 873 F.3d 1348, 1351 (11th Cir. 2017) (citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965); *see also* Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019).  "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility."  Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

exceptions.").  Pro se complaints are held to less stringent standards than those drafted by an attorney.  <u>Wright v. Newsome</u>, 795 F.2d 964, 967 (11th Cir. 1986) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ."  <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quoted in <u>Twombly</u>, 550 U.S. at 558).  As noted above, only factual allegations are "accepted as true" and not legal conclusions, <u>Ashcroft</u>, 556 U.S. at 678, 129 S. Ct. at 1949, even when the allegations are "doubtful in fact."  <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1965.  Thus, a motion to dismiss does not test the truth of a complaint's well pled factual allegations.

**Analysis**

## 1. Exhaustion and Timeliness

Defendant correctly points out that Plaintiff's amended complaint does not "allege that Plaintiff exhausted her administrative remedies or that she satisfied all conditions precedent to filing suit and should be dismissed on that ground alone."  ECF No. 53 at 12.  It is devoid of any such

information.  While beneficial to do so, such an omission is not fatal as exhaustion is an affirmative defense and not a pleading requirement.

In addition, Defendant states that "Plaintiff did not raise a disability claim" in her 2015 EEO Charge, EEOC case 4G-320-0047-15, so that claim should be barred.  *Id.* at 12-13.  Further, Defendant points out that Plaintiff's suit was filed on December 10, 2018, which is beyond the 90-day time limit.  *Id.* at 13.

In response, Plaintiff states that she presented her "issues to the agency and properly succeeded to exhaust administrative remedies."  ECF No. 61 at 15.  She says that she timely filed two cases[7] with the EEO, *id.* at 6, and that each EEO complaint was timely filed within the 45 day time period.  *Id.* at 13.  She notes that a final decision was issued on September 6, 2018, but says she did not receive that decision until September 11, 2018.  *Id.* at 6.  Based on that date, Plaintiff argues this case was timely filed within the 90-day period of time and 5-day mailing period.  *Id.* at 15.

When the receipt date is in dispute, courts "ordinarily presume that a mailing is received three days after its issuance."  Baldwin Cty. Welcome

---

[7] The cases identified were case # 4G-320-0047-15 and case # 4G-320-0012-16).  ECF No. 61 at 6.  She identifies them as exhibits 1B and 2A.  *Id.*

Case No. 4:18cv566-RH-MAF

<u>Ctr. v. Brown</u>, 466 U.S. 147, 148, n.1, 104 S. Ct. 1723, 1724, n.1, 80 L. Ed.

2d 196 (1984) (quoted in <u>Robbins v. Vonage Bus., Inc.</u>, 819 F. App'x 863,

867 (11th Cir. 2020)); *see also* Fed. R. Civ. P. 6(d).  Here, three days after

issuance of the EEO decision would be Sunday, September 9, 2018.

Because mail is not delivered on a Sunday, it must be deemed to have

been received on Monday, September 10th.  Indeed, Defendant's exhibit

contains a stamp which reveals Defendant received the decision on

September 10, 2018.  ECF No. 53-2 at 2.

However, there is no need to use a presumption in this case because

Plaintiff <u>said</u> that she received the EEO decision one day later, on

Tuesday, September 11, 2018.  ECF No. 61 at 6.  That Plaintiff received

the decision one day after the Defendant did is not cause for alarm or

suspicion; the letter was received within 5 days of mailing.  Moreover,

Plaintiff points out that the EEOC letter advised her that she had 90

calendar days from the date she received the decision to file a civil action.

ECF No. 61 at 15.  Importantly, the letter also stated in the "certificate of

mailing" that the Commission would presume that the "decision was

received within five (5) calendar days after it was mailed."  *Id.* at 15 (citing

to Exhibit 2B, ECF No. 61 at 54); *see also* Defendant's Ex. B, ECF No. 53-

2 at 9.  Accepting that Plaintiff received the EEOC letter on September 11, 2018, Plaintiff filed this case on the 90th day, Monday, December 10, 2018. Thus, it is recommended that the complaint be deemed to have been timely filed and the motion to dismiss be denied as to that argument.

Notwithstanding, review of the agency decision entered in case # 4G-320-0047-15 reveals that Defendant is correct as to another argument; that is - "Plaintiff did not raise a disability claim" in her 2015 EEO Charge, EEOC case 4G-320-0047-15.  *See* ECF No. 53-1.  Rather, the only claims Plaintiff asserted were for race, national origin, and retaliation.  ECF No. 61 at 47-48; ECF No. 53-1.

"Procedurally, a plaintiff must exhaust her administrative remedies with the EEOC before filing a complaint for discrimination under Title VII or the ADA."  Stewart v. Jones Util. & Contracting Co. Inc., 806 F. App'x 738, 740 (11th Cir. 2020).  It is also true that before bringing a claim for discrimination under the Rehabilitation Act,[8] a federal employee must exhaust administrative remedies.  Shiver v. Chertoff, 549 F.3d 1342, 1344 (11th Cir. 2008) (cited in Farid v. Brennan, No. 4:17cv456-MW/CAS, 2018

---

[8] "The Rehabilitation Act prohibits federal agencies from discriminating in employment against individuals with disabilities."  Farid, 2018 WL 7347625, at *1.

WL 7347625, at *1 (N.D. Fla. July 12, 2018)).  Accordingly, because

Plaintiff did not, her disability claim is barred for failure to exhaust

administrative remedies.

In addition, the EEOC decision in case 4G-320-0047-15[9] found that

Plaintiff's claim 1, based on not being paid properly on October 14, 2014,

was not timely filed because "the alleged incident did not occur within 45

days of Complainant's contact with an EEO Counselor."  ECF No. 53-2 at 4

(Defendant's Ex. B).  The EEOC decision states that "[o]n December 19,

2014, [Plaintiff] initiated counseling and filed a grievance with the Agency

regarding the claims" raised in that case.  *Id.* at 2.  Friday, December 19,

2014, is 46 days from the October 14th incident.

As noted by the Defendant, "[t]he first step of the EEO process for a

federal employee" is to "initiate contact with an EEO counselor from the

employing agency within forty-five days of the 'matter alleged to be

discriminatory.'"  29 C.F.R. § 1614.105(a)(1) (quoted in ECF No. 53 at 10).

---

[9] Plaintiff's complaint failed to include any facts which addressed whether or not she pursued the administrative process.  She did, however, attach a copy of several EEO investigative affidavits for case number 4G-320-0047-15 which concerned her claim that "on October 14, 2014, she was not paid correctly."  ECF No. 7 at 38-40, 48-49, 72.  Defendant submitted a copy of the EEOC decision for that agency case number.  Ex. B (ECF No. 53-2).

The Supreme Court has held that "discrete discriminatory acts are not

actionable if time barred, even when they are related to acts alleged in

timely filed charges."  National R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 113, 122 S. Ct. 2061, 2072, 153 L.Ed.2d 106 (2002) (quoted in

Stewart, 806 F. App'x at 741); *see also* Jordan v. City of Montgomery, 283

F. App'x 766, 767 (11th Cir. 2008).  "Only unlawful employment practices

complained of in a timely filed charge of discrimination to the EEOC can

form the basis for liability."  Stewart, 806 F. App'x at 740.  Because

Plaintiff's complaint concerning the improper pay was not filed within 45

days, it is barred and cannot be considered in this case.

### 2.  Res judicata

After dismissal of the disability discrimination claim and the claim for

improper pay on exhaustion grounds, the remaining claims in this case are

based on events that happened between September and December 2014.

Those claims involve Plaintiff's allegations that she was not chosen for

supervisory positions due to her EEO activity, she was yelled at and

harassed in an effort to force her to quit, not given the same treatment as

other employees such as denied breaks, relief, and an LLV, not permitted

to work as a Sunday Volunteer, and forced to work beyond her doctor's

limitations.  ECF No. 7 at 8-17.  Defendant argues that all of Plaintiff's

claims "were brought or could have been alleged in *Farid I* or *Farid II*."

ECF No. 53 at 4.  Defendant notes that Plaintiff's claims in this case "arise

out of the same operative nucleus of facts as the 2012 and 2017 cases

regarding alleged discrimination in employment during Plaintiff's

employment [with] the USPS."  *Id.* at 15.  Thus, Defendant seeks dismissal

based on the doctrine of res judicata.  *Id.* at 14-17.

Plaintiff acknowledged filing the other two cases, pointing out that she

was represented by counsel in both cases.[10]  ECF No. 61 at 2-5.  She

_____

[10] In the first case, Plaintiff claimed that her attorney, Marie Mattox, delegated
work to a paralegal who, Plaintiff says, "got angry and threatened to intentionally file the
responses late to make her lose."  ECF No. 61 at 2.  Plaintiff suggests that the paralegal
"chose to respond to the Judge three days after the due date" and, "[a]s a result," the
Court ruled in favor of the defendant.  *Id.*  Plaintiff's assertion is false.  The Order
granting defendant's summary judgment motion makes no mention of any delay
affecting the case.  Rather, the Order entered by District Judge Robert L. Hinkle pointed
out that Plaintiff Hala Farid presented "petty slights" in her complaint and did not present
"any evidence that she suffered any mistreatment at all based on her race, national
origin, or medical condition, or in retaliation for complaining about discrimination on
these grounds."  Farid v. Donahoe, No. 4:12cv621-RH/CAS, 2015 WL 11004883, at *8
(N.D. Fla. Jan. 5, 2015).
As for the second case, Plaintiff claimed her attorney, Kevin Sanderson, "was
very negligent and filed her suit on October 11, 2017, three days beyond the ninety-day
statutory time limit."  ECF No. 61 at 5.  Plaintiff claimed that she "lost the second case
again because her attorney failed to count the days correctly."  *Id.*  Although Chief
United States District Judge Mark E. Walker noted that the case was filed three days
beyond the time limit, that was not the reason the defendant's motion to dismiss was
granted.  Rather, the disability discrimination claim was dismissed for Plaintiff's failure to
exhaust her administrative remedies, and her other two claims were dismissed for
"failure to sufficiently allege a plausible claim for relief under the Rehabilitation Act and

states that this case involves two EEO cases (4G-320-0047-15 and 4G-320-0012-16) and is based on a final decision received on September 11, 2018. *Id.* at 6. She argues that this case is distinct from the prior EEO cases because new EEO cases have a "specific EEO number" and are not intermingled with old EEO cases. *Id.* at 13-14. Furthermore, she contends that she "is not re-opening the old cases" and states that the "current suit has sufficiently new facts with different dates."[11] *Id.* at 7. Thus, Plaintiff contends that res judicata does not apply because this case involves different facts with "different dates, not mentioned in the previous cases." *Id.* at 16.

Plaintiff's first lawsuit (case number 4:12cv621-RH-CAS) was dismissed on January 5, 2015, when summary judgment was granted in favor of the Defendant. ECF No. 53 at 3 (explaining "*Farid I*"). This Court found that Plaintiff's "petty complaints" came "nowhere close to a violation of Title VII or the Americans with Disabilities Act," and did "not suggest

---

Title VII." Farid v. Brennan, No. 4:17cv456-MW/CAS, 2018 WL 7347625, at *4 (N.D. Fla. July 12, 2018).

[11] Plaintiff's response admits that the events alleged span from December 1, 2014, through August 31, 2015. *Id.* at 7-9. As explained below, those dates overlap with the events alleged in Plaintiff's second case, "Farid II."

discrimination or retaliation." Farid v. Donahoe, No. 4:12cv621-RH-CAS, 2015 WL 11004883, at *2 (N.D. Fla. Jan. 5, 2015), *aff'd sub nom.* Farid v. Postmaster Gen., 625 F. App'x 449 (11th Cir. 2015). As explained by Plaintiff, the "case involved all the Defendant's discriminatory action for violation of her work limitations, pay owed, reasonable accommodations, mistreatment and failure to promote her on account of her race, national origin[,] harassment and retaliation." ECF No. 61 at 2-3.

Plaintiff's second lawsuit was not successful either. Case number 4:17cv456-MW-CAS ended on July 12, 2018, when Defendant's motion to dismiss was granted. ECF No. 53 at 3. There, Plaintiff alleged "retaliation and discrimination on the basis of national origin and disability under the Rehabilitation Act of 1973 and the Americans with Disabilities Act ('ADA')." Farid, 2018 WL 7347625, at *1 ("*Farid II*"). Plaintiff's ADA claim was dismissed on sovereign immunity grounds, the Rehabilitation Act claims were dismissed for failure to exhaust administrative remedies, and the complaint was otherwise "dismissed for failure to sufficiently allege a plausible claim for relief under the Rehabilitation Act and Title VII." 2018 WL 7347625, at *4. This case was filed five months after the dismissal of *Farid II*.

In part, Defendant's res judicata defense is based on the decision in

Hooker v. Sec'y, United States VA, 607 Fed. Appx. 918 (11th Cir. 2015),

because all of "Plaintiff's claims arise out of the same operative nucleus of

facts as the 2012 and 2017 cases regarding alleged discrimination in

employment during Plaintiff's employment with the USPS."  ECF No. 53 at

14-15.  Defendant points out that Plaintiff's claims of discrimination in this

case arise from "the same operative nucleus of facts" and include the same

allegations: "discrimination based on disability, national origin, race, and

retaliation.  *Id.* at 15-16.  Even if not barred by *Farid I*, Defendant contends

the "claims most certainly bare barred by *Farid II*."  *Id.* at 16.

Similar to this case, Hooker v. Sec'y, U.S. Dep't of Veterans Affs.,

607 F. App'x 918, 919 (11th Cir. 2015), involved the plaintiff's third case

filed against the defendant.  Mr. Hooker's claims against the Secretary of

the Department of Veterans Affairs were based on his previous

employment as a police officer at the Bay Pines Veterans Affairs Health

Care system.  Hooker, 607 F. App'x at 919.  Hooker alleged in each case

that retaliatory measures had been taken against him because of a

deposition he gave in an administrative investigation.  607 F. App'x at 919.

His first case was filed while EEOC proceedings were pending and

asserted "claims of retaliation and retaliatory hostile work environment" which "stemmed from his 2008 deposition disclosure as well as his complaints to the EEOC." *Id.* at 919-20. The case was dismissed with prejudice for plaintiff's "willful failure to comply with discovery orders." *Id.* at 920.

Hooker did not appeal that dismissal but filed a "second complaint the following day." *Id. Hooker II* "reiterated his allegations of retaliation and hostile retaliatory work environment." *Id.* That case was dismissed on February 15, 2013, "as barred by res judicata." *Id.*

A year later, Hooker filed suit for the third time. *Id. Hooker III* was also based on plaintiff's allegations "that Bay Pines engaged in a 'pattern and practice of retaliation and hostile retaliatory work environment....'" *Id.* Although the complaint did not specifically complain about his 2008 deposition, Hooker claimed that he suffered retaliation because of his EEOC filings. *Id.* Again, the case was dismissed on res judicata grounds.

"The doctrine of res judicata 'bars the filing of claims which were raised or could have been raised in an earlier proceeding.'" Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999) (quoted in Hooker, 607 F. App'x at 920). "A claim is barred by res judicata if each of the

following elements is satisfied: (1) there is a final judgment on the merits,

(2) the decision was rendered by a court of competent jurisdiction, (3) the

parties (or those in privity with them) are identical in both suits, and (4) the

cases involve the same cause of action."  607 F. App'x at 920 (citing

Ragsdale, 193 F.3d at 1238).

Here, there is no dispute about the first three elements: (1) Plaintiff's

prior two cases were dismissed in this Court - a court of competent

jurisdiction, (2) there was a judgment on the merits, and (3) the parties

were the same - Plaintiff Hala Farid sued the Postmaster General.  The

only dispute is over the fourth element - whether the causes of action are

the same.  Defendant says they are because the claims are the same

(discrimination based on national origin, race, and retaliation) and the

events occurred in 2014-2015 so could have been brought in *Farid II* which

was filed on October 11, 2017.  ECF No. 53 at 16.

Plaintiff, on the other hand, acknowledges that this "case involves the

same parties as the previous two cases."  ECF No. 61 at 16.  She also

acknowledges that there are "repetitive wrongful doings and retaliation."  *Id.*

Plaintiff admits that "[a]ll suits involved essentially the same course of

wrongful conduct," but she claims this case "has sufficiently new facts" and

the new claims occurred on "different dates." *Id.* In particular, she points

out that the claims in this case are "based on different events that had not

yet occurred at the time of the first suit." *Id.* She urges denial of the motion

to dismiss because res judicata does not bar this case.

Indisputably, Plaintiff's claims in this case overlap with the claims she

raised in her prior two cases. In total, she has filed three cases alleging

retaliation and discrimination based on race and national origin. However,

the events supporting those claims are different and occurred at different

times. The <u>Hooker</u> plaintiff alleged a pattern of harassment and retaliation,

but the events demonstrating those claims - such as his termination as a

Bay Pines police officer - were included in *Hooker III* as well as in his first

lawsuit. 607 F. App'x at 921 ("Although we acknowledge that in Hooker III

Mr. Hooker emphasized his termination more than he did in Hooker I, the

fact remains that all of the Title VII violations Mr. Hooker identified in both

complaints arose out of the same alleged retaliatory practices of Bay

Pines"). Thus, "the claims in *Hooker I* and in *Hooker III* (and, of course, in

*Hooker II* ) all arose out of the same 'series of transactions.'" *Id.* That is not

the case here.

The decision in *Farid II*[12] reveals that the facts alleged in support of Plaintiff's claims for discrimination and retaliation are based on a different series of events.[13]  There, Plaintiff's claims involved the Defendant's "decision not to award her bid for a specific letter carrier route."  Farid, 2018 WL 7347625, at *2.  Plaintiff placed a bid for that route in January 2014 and said she was eligible for the bid-upon position; she alleged that the defendant's justification for not awarding her the position was "a pretext" for discrimination, and she claimed she "was denied the position on the basis of race, national origin, and prior EEO activity."  *Id.*  She filed an EEO complaint on April 5, 2014, concerning those events.  Those are separate events than have been alleged in this case; these events occurred in September through December of 2014.

"The Supreme Court has explained that following 'a full and fair opportunity to litigate, [res judicata] protects [a party's] adversaries from the

---

[12] Plaintiff is correct that the events in *Farid I* took place between 2007 and July 2013; the claims are clearly separate from this case and need not be discussed.  *See* Farid, 2015 WL 11004883, at *8.

[13] Plaintiff asserted claims for "discrimination based on race, national origin, and retaliation for prior EEO activity" in Farid, 2018 WL 7347625, at *2.  She also alleged a claim for discrimination based on disability which, ironically, was dismissed for the same reason it is recommended that it be dismissed here - Plaintiff did not include that claim in her EEOC charge and it could not "reasonably be expected to grow out of the charge of discrimination outlined above."  2018 WL 7347625, at *2.

expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153-54, 99 S. Ct. 970, 973-74, 59 L. Ed. 2d 210 (1979) (quoted in O'Connor v. PCA Fam. Health Plan, Inc., 200 F.3d 1349, 1355 (11th Cir. 2000)). Res judicata prohibits redundant claims and cases, but only if a subsequent case "arises out of the same nucleus of operative fact." O'Connor, 200 F.3d at 1355 (affirming dismissal of plaintiff's second case and FMLA claim which stemmed "from a single event, namely, the termination of her employment"). A case cannot arise out of the "same nucleus of operative fact" if it is not "based upon the same factual predicate as [the] former action." Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1503 (11th Cir. 1990).

Put another way, "res judicata turns primarily on the commonality of the facts of the prior and subsequent actions, not on the nature of the remedies sought." Kaiser Aero. & Elecs. Corp. v. Teledyne Indus. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1295 (11th Cir. 2001) (citing Olmstead v. Amoco Oil Co., 725 F.2d 627, 632 (11th Cir. 1984), and noting that res judicata bars new or alternative "legal theories and claims arising out of the

same 'operative nucleus of fact'")).  That two cases may be related, or one case may give rise to a second case "does not establish that the cases share the same factual predicate."  <u>In re Piper Aircraft Corp.</u>, 244 F.3d at 1297.  "Res judicata does not preclude claims based on facts not yet in existence at the time of the original action."  <u>Drake v. F.A.A.</u>, 291 F.3d 59, 66 (D.C. Cir. 2002) (finding "[t]he doctrine does not bar a litigant from doing in the present what he had no opportunity to do in the past").

Here, Plaintiff's third case asserts the same types of claims Plaintiff raised in her prior two cases, but the factual basis of the claims are not the same as the facts Plaintiff litigated in her prior two cases.  Additionally, Plaintiff has not attempted to assert new legal theories based on facts already litigated.  Common sense dictates that if a plaintiff files a lawsuit in 2017 to challenge actions which occurred in 2014 and loses, the plaintiff is not barred from filing a second lawsuit in 2020 for different actions which occurred in 2016.[14]  That is what has happened here.  Defendant's motion to dismiss on the basis of res judicata should be denied.

---

[14] If that were the case, a defendant who won an initial employment discrimination lawsuit could engage in subsequent unlawful discrimination with impunity.

### 3. Fails to state a discrimination claim

Defendant argues that Plaintiff's amended complaint does not

present a plausible claim of discrimination based on national origin or race.

ECF No. 53 at 22-23.  Defendant points out that Plaintiff has presented

nothing more than conclusory allegations of discrimination, and has not

alleged a factual basis for her claims.  *Id.*  Defendant argues that Plaintiff's

amended complaint "offers no facts plausibly suggesting that the reason for

whatever treatment the plaintiff is complaining about was her national origin

or race, and this claim is due to be dismissed."  *Id.* at 25.

 "Title VII of the Civil Rights Act of 1964 proscribes discrimination in

employment on the basis of race, color, religion, sex, or national origin."

Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1846, 204 L. Ed. 2d 116

(2019) (citing 42 U.S.C. § 2000e–2(a)(1)); Chambers v. Fla. Dep't of

Transp., 620 F. App'x 872, 876 (11th Cir. 2015).  Crucial to establishing a

basis for such a claim is a showing that the employee was treated

differently (worse) than "similarly situated employees."  Chambers, 620 F.

App'x at 879.

"In employment discrimination cases, the facts alleged in a plaintiff's

complaint must be either '(1) sufficient to support a plausible inference of

discrimination, or (2) sufficient to show, or at least support an inference, that [they] can make out a prima facie case under the familiar burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." <u>Ansley v. Fla., Dep't of Revenue</u>, No. 409cv161-RH/WCS, 2009 WL 1973548, at *2 (N.D. Fla. July 8, 2009) (quoted in <u>Farid</u>, 2018 WL 7347625, at *2). Thus, if a plaintiff is unable to allege facts showing "direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude," then Plaintiff must allege sufficient facts which show "circumstantial evidence of discrimination." <u>Bailey v. DAS N. Am., Inc.</u>, 473 F. Supp. 3d 1310, 1325-26 (M.D. Ala. 2020). Here, Plaintiff has provided no factual allegations which reveal direct evidence of either race or national origin discrimination; she does not relate any blatant remarks or actions.

Thus, the amended complaint has been reviewed for sufficient allegations which support circumstantial evidence. Plaintiff must have provided sufficient facts which "create an inference of discrimination." <u>Farid</u>, 2018 WL 7347625, at *2; <u>Bailey</u>, 473 F. Supp. 3d at 1325. By and large, her allegations are conclusory only. As an example, Plaintiff

complained of an issue with her pay, but stated only: "Plaintiff was

mistreated due to discrimination based on her National Origin, retaliation,

harassment, and hostile work environment."  *Id.* at 7.  Stating a conclusion

is different than stating facts to support that conclusion.

Having fully reviewed Plaintiff's amended complaint, the Court has

found only one such allegation of discriminatory treatment.[15]  Plaintiff

alleged she "is a member of a protected class due to her race and national

origin (White-Egyptian)."  ECF No. 7 at 2.  She is well educated, having

earned a "Master's Degree in management and international business,"

and alleged she was well qualified to work for the United States Postal

Service.  *Id.* at 3.  She became a "regular" rural carrier in April of 2014.  *Id.*

at 5, 6.  On December 9, 2014, Plaintiff reported that her personal car had

---

[15] Plaintiff did allege at another point that her manager, Paul Jones, "yelled at" her and discriminated against her when she asked for "relief."  ECF No. 7 at 9.  She claimed that no other employees "who were not White/Egyptian were" treated "with such disrespect after making a simple and often granted request."  *Id.* at 10.  Yelling at an employee is disrespectful, but it is a "petty complaint" which does not rise to the level of discrimination prohibited by the civil-rights statutes.  Farid, 2015 WL 11004883, at *1 (noting Plaintiff brought only petty complaints and that the courts do not "sit as a super-personnel department").  "[R]ude remarks and social slights" are not severe enough to "create a retaliatory hostile work environment."  Patsalides v. City of Fort Pierce, 724 F. App'x 749, 752 (11th Cir. 2018) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.").

to be towed to a mechanic and she requested use of an LLV.  *Id.* at 10.

Her request was denied and she was directed "to leave immediately," but

Plaintiff subsequently discovered that her manager, Paul Jones, replaced

her with an African-American woman and drove her to another post office

station so she could obtain an available LLV to deliver the mail.  *Id.* at 10-

11.  In doing so, Plaintiff alleged that she was not paid "for the 4 hours she

worked in casing her route," and the substitute carrier was "paid for the

whole route, including casing."  *Id.* at 10-11.  That is sufficient at the motion

to dismiss stage to support a claim of racial discrimination.  There are,

however, no facts provided which support even an inference of

discrimination based on national origin.

### 4.  Fails to state a retaliation claim

The final claim asserts a retaliation claim based on Plaintiff's having

filed "a series of EEOC complaints . . . on a multitude of issues."  ECF No.

7 at 22.  She claimed to have "voiced opposition to unlawful employment

practices during Plaintiff's employment with Defendant and was the victim

of retaliation thereafter . . . ."  *Id.*

"Title VII prohibits an employer from retaliating against an employee

because [s]he opposed an unlawful employment practice or 'made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"  42 U.S.C. § 2000e-3(a) (quoted in Rashad v. Fulton Cty., 851 F. App'x 924, 926 (11th Cir. 2021)). "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between his protected activity and the adverse action."  Rashad, 851 F. App'x 924, 926 (citing Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012)).

As to this claim, Defendant is correct - the amended complaint "alleges nothing more than conclusory allegations, legal conclusions and formulaic recitations of elements of retaliation."  ECF No. 53 at 27.  There are no specific facts alleged which reveal a connection between Plaintiff's engaging in protected First Amendment activities and any adverse employment action.  Merely stating that some vague action was retaliation is insufficient to support the claim.

In addition, the only protected activity explained in Plaintiff's complaint occurred in 2010.  ECF No. 7 at 3-4, 7-8; *see also* ECF No. 61 at 28.  Because there are no facts alleged to show retaliatory acts, a claim

based on "temporal proximity" alone must be "very close."  Thomas v.

Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (quoted in

Rashad, 851 F. App'x at 926).  In Rashad, the plaintiff alleged that his

employment was terminated "nearly four months" after the employer

"received notice of his EEOC charge."  851 F. App'x 926-27.  The Court

held that, as a matter of law, that "temporal proximity" was insufficient.  *Id.*

at 927.  On that "issue, timing is everything."  *Id.* at 926.  Here, Plaintiff's

timing is far off the mark.  Events in this case which occurred in 2014, four

years after Plaintiff's prior First Amendment activities, are too distant to

demonstrate a causal connection.  The motion to dismiss the retaliation

claim should be granted.

## **RECOMMENDATION**

It is respectfully **RECOMMENDED** that: (1) claims raised by Plaintiff

in case number 4:19cv60-RH-MJF which were not included in the first

amended complaint filed in this case should be dismissed for failure to

prosecute; (2) Defendant's motion to dismiss Plaintiff's amended complaint,

ECF No. 53, should be **GRANTED** as to Counts I, II, and IV of Plaintiff's

amended complaint, ECF No. 7, and all discrimination claims raised in

Count III except the racial discrimination claim pertaining to the December

9, 2014, incident, but the motion should otherwise be **DENIED**.  It is further

**RECOMMENDED** that the case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on October 1, 2021.

 S/    Martin A. Fitzpatrick                   
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**